290 So.2d 766 (1974)
Phillip J. SARAGUSA
v.
Sam DIPAOLA et al.
No. 9695.
Court of Appeal of Louisiana, First Circuit.
February 15, 1974.
Rehearing Denied March 18, 1974.
Writ Refused April 26, 1974.
William M. Quin, Kentwood, for appellant.
L. B. Ponder, Jr., Amite, for appellees.
Before LANDRY, ELLIS and PICKETT, JJ.
*767 PICKETT, Judge.
The plaintiff, Philip J. Saragusa, instituted this suit in which he alleged that a sale of certain real estate by defendant, Sam Dipaola, to defendant, Ludwig Bandaries, Jr., should be annulled and set aside, or in the alternative he should be awarded damages because of the fraudulent transfer of said real estate. The defendants filed exceptions of no right or cause of action, which were sustained by the district court, and the plaintiff's suit was dismissed. The plaintiff appealed, and on appeal the judgment of the district court was reversed, and the suit remanded to the Trial Court for further proceedings. Saragusa v. Dipaola, La.App., 247 So.2d 400. The defendants then filed an answer denying any fraudulent or tortous acts. The Trial Court rendered judgment in favor of plaintiff and against the defendant, Sam Dipaola, for the sum of $3,131.67, with legal interest and costs. The plaintiff and defendant, Sam Dipaola, both have appealed.
The record shows that plaintiff and defendant, Sam Dipaola, were engaged in the sand and gravel business as a partnership for some fifteen years, until on or about August 31, 1963, when they decided to dissolve the partnership which was known as the Independence Sand & Gravel Company. The plaintiff agreed to sell all of his interest in the partnership to Sam Dipaola. On August 31, 1963, they entered into the following agreement, to-wit:
"BE IT KNOWN by these presents that Philip J. Saragusa and Sam Dipaola do hereby voluntarily dissolve the partnership existing between them known as Independence Sand & Gravel Company;
That the said Philip J. Saragusa has sold all of his undivided right, title and interest in and to the assets of the said company for the price and sum of $12,900.00; that in effecting the said sale, the land was appraised at and sold to Sam Dipaola for $7,000.00 (of which $3,500.00 was paid to the said Philip J. Saragusa).
Accordingly, it is agreed between the parties that after the said Sam Dipaola discontinues his sand & gravel operations on the said real property, the said property will be sold; and should more than $7,000.00 be realized from the sale of the said property alone, less all expenses of sale, the excess received therefrom shall be distributed equally between the said Sam Dipaola and Philip J. Saragusa.
The property involved is a tract of land comprising eighty-one (81) acres, more or less, situated in Section 40, T5SR7E., Tangipahoa Parish, State of Louisiana, acquired by the parties herein in COB 213, page 544.
THUS DONE AND SIGNED in the presence of me, Notary, and the undersigned competent witnesses on this 31st day of August, 1963."
The agreement is authentic in form, and was signed by plaintiff and Sam Dipaola in the presence of two witnesses and a Notary Public. On the same date, the plaintiff transferred to Sam Dipaola his undivided one-half interest in the eighty-one acres of land mentioned in the agreement quoted above. The plaintiff reserved one-half of all mineral rights excluding the dirt, sand and gravel. On April 12, 1969, Sam Dipaola sold to Ludwig Bandaries, Jr., for a consideration of $6,500.00, the eighty-one acres of land mentioned in said agreement, less all mineral rights. Dipaola reserved the right of ingress and egress to remove sand and gravel for a period of ten years.
The plaintiff contends that Sam Dipaola violated their agreement when he sold the eighty-one acres of land to Ludwig Bandaries, Jr. Mr. Saragusa, also, contends Bandaries was a party to the violation of the agreement because he either knew, or had constructive knowledge, of his agreement with Dipaola because the agreement *768 was a matter of public record. Therefore, the plaintiff contends the defendants in concert acted together to wrongfully deprive him of the profit he could have realized from the sale of the property in dispute. Hence, the plaintiff contends that the sale of the property to Bandaries is a simulation and should be set aside, or in the alternative he is entitled to a money judgment for the amount that he could have realized had defendant, Dipaola, sold it for its true value.
In support of his contention that the deed from Dipaola to Bandaries is a simulation, the plaintiff pointed out that no consideration was paid in the presence of any third party. Both defendants testified that the consideration was paid in cash, and that they were alone when the money was paid. Both defendants admitted that Dipaola sold the timber on the property in dispute for $2,500.00, after the deed was passed to Bandaries, and that Dipaola received the money from the sale of the timber. In fact, Bandaries first testified that no timber had been sold on the property, but later admitted the sale. Bandaries has paid no taxes on the property, and Dipaola has signed the homestead exemptions on it. There is no evidence of any acts of ownership exercised by Bandaries after the title was placed in his name. However, having concluded that plaintiff is entitled to the relief sought in his alternative plea for a money judgment, because Dipaola breached his contract with plaintiff, as hereinafter set forth, we find that it is unnecessary to resolve the issue of whether the transfer of the 81 acres here involved was a simulation.
In support of his alternative demand for damages, the plaintiff testified that defendant, Sam Dipaloa, completed his sand and gravel operations on the property, and moved his equipment off. According to their agreement relative to the real estate, the property was then to be sold. The plaintiff had some prospective buyers who were willing to pay at least $165.00 per acre for the land. He attempted to communicate with Mr. Dipaola by telephone, and inform him of the prospective purchasers. But Mr. Dipaola informed him the property was not for sale; that he intended to build a summer home on it. Dipaola told him it was his property, and that he did not want to hear any more from him about it; and finally terminated the conversation with defamatory remarks directed at the plaintiff. The plaintiff tried later to talk to Dipaola by telephone, but he did not answer his call. Mr. Dipaola did not deny the telephone conversation, nor that he made disparaging remarks that time.
We think it clear from the contract executed when the partnership was dissolved that the parties contemplated the eventual sale of the 81 acre tract at a fair and mutually agreeable price. It is equally clear from the evidence that the sale made by Mr. Dipaola meets neither of these criteria, and therefore he breached the contract and is liable for the damages sustained by plaintiff as a result.
The plaintiff's claim for damages resulting from the sale of the land mentioned in the agreement between plaintiff and Sam Dipaola necessarily depends on the value of the land at the time it was sold to Bandaries. Mr. Paul Uli testified that he talked with Mr. Dipaola about purchasing the property prior to the sale to Bandaries. He said Dipaola asked him $16,000.00 for the property. Dipaola admitted that he talked with Mr. Uli about the property, but he denied that he named a price. John A. Petitto, a wealthy strawberry farmer, testified that he had been willing to pay $165.00 per acre for the property. Stanley Anderson, a witness for defendants, testified that he appraised the property, and that in his opinion it had a value of $100.00 to $125.00 per acre in 1969. Mr. Anderson was a banker and had made numerous appraisals for the bank in which he was interested. He testified that he had been engaged in the sand and gravel business in that area for many years, *769 and was familiar with the value of the property, such as that herein involved. As already observed, defendant, Sam Dipaola, admitted that he had received $2,500.00 for timber sold and removed from the property, prior to the appraisal by Mr. Anderson. Hence, if the value of the timber is added to the maximum value placed on the property by Mr. Anderson, the value per acre placed on the property by Mr. Dipaola and his witness, Mr. Anderson, does not fall far short of the $165.00 per acre value claimed by the plaintiff.
The Trial Judge found the property had a value that entitled the plaintiff to a judgment in the sum of $3,182.50, at the time the title was transferred. Obviously, the Trial Judge found the property had a value of $13,365.00, and that one-half of the value of the property in excess of $7,000.00, was the quantum of damages that he awarded to the plaintiff. Based on the record, we find no manifest error in this conclusion of fact. It is a venerable rule of law in Louisiana that the finding of fact by the trial court will not be upset on appeal unless deemed manifestly erroneous by the appellate court, especially where the issue to be resolved depends upon the credibility of witnesses. Dorsey v. Couteau, La.App., 264 So.2d 800; and Dykes v. North River Insurance Company, La.App., 270 So.2d 329.
The plaintiff has complained that the lower court should have awarded seven per cent interest from judicial demand, instead of five per cent interest. This suit was filed April 29, 1969. At that time, the rate of legal interest was fixed at five per cent per annum. LSA-R.S. 13:4203; Ducote v. Life Insurance Co. of La., La.App., 245 So.2d 531. In a suit for damages resulting from a breach of contract, legal interest attaches from date of judicial demand. Schuylkill Products Company v. Alloy Metal Products, Inc., La.App., 219 So.2d 322. The interest rate fixed by the Trial Court is correct.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant, Sam Dipaola.
Affirmed.