548 So.2d 369 (1989)
Homer E. PERKINS, et ux., Plaintiffs-Appellees,
v.
Florence B. FONTENOT, et al., Defendants-Appellants.
No. 88-607.
Court of Appeal of Louisiana, Third Circuit.
September 1, 1989.
*370 John E. Demoruelle, Kinder, for plaintiffs-appellees.
Jeff F. Townsend, Jr., and Billie C. Woodard, Lake Charles, for defendants-appellants.
Before DOUCET, KNOLL and KING, JJ.
KNOLL, Judge.
Florence B. Fontenot, Catherine Sue Thompson, and Barbara F. Johnson (hereafter appellants) appeal an adverse default judgment which set the boundary between their property and that of Homer and Arlene Perkins, and recognized the Perkins' ownership of a 15 foot strip of land between their town lots by acquisitive prescription.
The appellants contend that: (1) the trial court should have granted their motion for new trial; (2) the trial court improperly took their motion for new trial under advisement until the Perkins' action against two other co-defendants, who answered the lawsuit, was tried on the merits; and (3) the judgment by default was not supported by evidence sufficient to establish a prima facie case.

FACTS
This boundary action involves a dispute over the south 15 feet of Lot 4 of Block 17 of the Kingery Addition to the City of Kinder. Appellants are the record owners of Lot 4 and the Perkins are the record owners of Lot 3. These two lots were originally purchased in 1919 by Frank U. Jemison and remained in the Jemison family until Lot 4 was sold in 1963 to Charlie Billodeaux and Lot 3 was sold in 1964 to Lovelin Bell. The Perkins are successors in title to Bell and the appellants are successors in title to Billodeaux.
There is an old fence on Lot 4, running generally in an east-west direction, which is located 15 feet north of the surveyed property line between Lots 3 and 4.
On December 10, 1986, Homer and Arlene Perkins sued appellants and Hazelton Fontenot, Jr. and William Fontenot, the owners in division of Lot 4, asking the trial court to fix the common boundary between the lots at the old fence. On March 2, 1987, a preliminary default was entered against appellants. On March 27, 1987, an attorney filed an answer on behalf of William Fontenot, and on April 9, 1987, a curator ad hoc filed an answer on behalf of Hazelton Fontenot, Jr. an absentee. On April 19, 1987, counsel for the Perkins filed a supplemental petition, asking the trial court to recognize that the Perkins or their ancestors in title have possessed the disputed 15 feet for 30 years, and the boundary should thus be set in accordance with 30 years' acquisitive prescription. On May 8, 1987, preliminary defaults were again entered against appellants. On May 22, 1987, the preliminary defaults were confirmed against appellants and judgment *371 was signed, setting the boundary on the old fence line and recognizing the Perkins as the owners of the disputed 15 feet.
On May 28, 1987, an untimely answer was filed on behalf of the appellants and on May 29, 1987, a motion for a new trial was filed on behalf of appellants.
The trial court heard the appellants' motion for new trial on July 8, 1987, and took the matter under advisement stating the judgment on the motion would not be rendered until after it heard the trial on the merits against William Fontenot and Hazelton Fontenot, Jr. who had not been defaulted. On March 8, 1988, the trial court, without any notice to the parties, denied the appellants' motion for new trial and on the same day signed the judgment. This appeal was then taken.

NEW TRIAL: DISCRETIONARY GROUNDS
The appellants contend that the trial court should have granted a new trial because the Perkins' attorney informally allowed appellants more time to file responsive pleadings.
LSA-C.C.P. Art. 1973 provides that the trial court may grant a new trial in any case if there is good ground therefor. The granting or refusal of a motion for new trial based solely on discretionary grounds is within the discretion of the trial court and its action will not be disturbed on appeal unless it clearly appears that the trial court abused its discretion. Menard v. King, 469 So.2d 15 (La.App. 1st Cir.1985).
In support of the motion, appellants rely on a letter written on April 29, 1987, by their attorney to the attorney for the Perkins after the Perkins' attorney had filed the supplemental pleading. Though a copy of this letter appears in the record as an attachment to the motion for new trial, we note that the hearing on the motion for new trial was not transcribed and thus we have no showing that the letter was admitted into evidence at that time. Items of evidence not formally introduced into the record are not properly before us for appellate review and cannot be considered. Thus, this issue is not properly before us.
Moreover, even if we were to consider the letter, we do not find that the trial court abused its discretion in denying the motion on this ground. The letter does not specify the client's name. Instead it states that "I understand that you will take no action detrimental to my client without first notifying my office." (Emphasis added.) No reference is made to multiple clients, i.e., which would include the appellants. Furthermore, on March 27, 1987, prior to the letter in question, the defense attorney had filed only one formal pleading and this was filed on behalf of William Fontenot. Nowhere is there evidence that counsel for the Perkins was aware that defense counsel represented appellants.

NEW TRIAL: PEREMPTORY GROUNDS
Appellants contend that the trial court also erred in failing to grant their motion for new trial because the judgment was clearly contrary to the law and evidence. In a related argument, appellants contend that the Perkins failed to meet the burden of proof necessary to confirm a judgment by default.
LSA-C.C.P. Art. 1972 provides that a new trial shall be granted where the judgment appears clearly contrary to the law and the evidence.
In order to obtain a reversal of a default judgment appealed from, or to obtain a remand, defendant must overcome the presumption that the judgment was rendered upon sufficient evidence and that it is correct. Philip White, Etc. v. Baricev/Waguespack, 410 So.2d 1247 (La.App. 3rd Cir.1982). However, this presumption does not exist where the record contains a note of evidence introduced or a transcript of the proceedings in the trial court. Id., at 1248.
In the present case, we have a complete transcript of the confirmation proceedings. Therefore, there is no presumption that the trial court's judgment was *372 based upon sufficient evidence and that it is correct.
LSA-C.C. Art. 792 provides:
"The court shall fix the boundary according to the ownership of the parties; if neither party proves ownership, the boundary shall be fixed according to limits established by possession."
LSA-C.C. Art. 794 further provides:
"When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds."
In the present case, it is clear that the Perkins relied upon 30 years acquisitive possession of the disputed 15 foot strip of land in their argument to the trial court for the establishment of their boundary.
At the confirmation of the default judgment, four witnesses were presented to the trial court. In addition, the trial court considered a recent survey, several deeds from the Perkins' chain of title, and the judgment of possession by which the appellants and their co-owners acquired their ownership interest in Lot 4 which were admitted into evidence.
Homer Perkins, the current owner of Lot 3, testified that he thought the fence line was the boundary of his property. He also identified a survey of Richard Reeves, a registered land surveyor, dated October 16, 1986, showing the title boundaries of the lots at issue as well as the location of the fence beyond his titled ownership. He did not testify as to his acts of physical possession sufficient to establish possession to the fence line.
Lovelin Bell, the Perkins' immediate predecessor in title to Lot 3, testified that she did not mow the grass up to the fence, and concluded her testimony by saying that she did not know if the fence was the boundary.
R. Z. Cloud, a Kinder resident who was familiar with the property, was next to testify. He stated that the fence had been in the same location since 1954 and that he was unaware of any complaints about the location of the fence.
Leroy Manuel, a gentleman who worked with Frank Jemison, the original owner of the tracts, and his son, Fred Jemison, testified that he worked on this property from 1947 until the 1950s. He was familiar with the fence at issue and that it had been standing in the same location since approximately 1947. His only other testimony was that the grass had been mowed for 20 years up to the fence line. He did not specify the years encompassed by the 20 year period and did not state that the mowing was done in consecutive years.
Although the Perkins have owned Lot 3 since 1986, the record is void of any testimony that they performed any possessory acts on the disputed property since their purchase. The only other evidence of acts of possession is that the grass was mowed up to the fence for 20 years. From the evidence presented, we find that the Perkins failed to make a prima facie showing of possession to support the entry of the default judgment against the appellants.
Moreover, we have reviewed the evidence in light of the jurisprudence under LSA-C.C. Art. 794 which holds that one may utilize tacking to prescribe beyond title on adjacent property to the extent of visible boundaries. In connection with our review, we are likewise mindful that it is well settled that where two tracts of land have a common owner there can be no adverse possession because an owner cannot prescribe against himself. Porterfield v. Spurgeon, 379 So.2d 56 (La.App. 3rd Cir. 1979), writ denied, 381 So.2d 1235 (La. 1980).
In the present case, the evidence shows that the Jemison family owned lots 3 and 4 until 1963 and that the fence was erected on the property since at least 1947. Nevertheless, since there was no adverse ownership of Lots 3 and 4, adverse possession could only begin in 1963. Accordingly, we find that under these facts the Perkins *373 are unable to establish 30 years adverse possession. Thus, we find that the default judgment was contrary to the law.
Therefore we find that the trial court erred in denying the appellants' motion for a new trial.
For the foregoing reasons, the judgment of the trial court is reversed and set aside, and this case is remanded to the trial court for a new trial. Costs of this appeal are assessed to the Perkins.
REVERSED AND REMANDED FOR A NEW TRIAL.