596 So.2d 1334 (1992)
ACADIENERGY, INC., et al., Plaintiffs-Appellees,
v.
McCORD EXPLORATION COMPANY; McCord 1984 Exploration Fund Partnership; Charles T. McCord, III; and Westover Oil Company, Defendants-Appellants.
No. 90-595.
Court of Appeal of Louisiana, Third Circuit.
January 14, 1992.
*1335 Brook, Morial, Cassibry & Pizza, H. Dillon Murchison and Norman F. Pizza, New Orleans, for plaintiffs/appellees.
Lapeyre, Terrell & Randazzo, F. Henri Lapeyre, Jr., David W. Rusch, and Matthew J. Randazzo, III, New Orleans, for defendants/appellants.
Before DOMENGEAUX, C.J., and GUIDRY and KING, JJ.
*1336 KING, Judge.
The issues presented for decision by these consolidated appeals are (1) whether a drilling agreement provided for a well cost adjustment upon subsequent revisions to the unit originally established by the Louisiana Office of Conservation, (2) whether La.R.S. 30:10 is applicable; (3) whether there was error in the calculation of the amount due for a well cost adjustment; (4) the date from which interest on a well cost adjustment should accrue for such well cost adjustment; (5) whether interest on a judgment should accrue from the date of judicial demand; (6) whether plaintiff forfeited its interest in an oil well under the terms of a joint operating agreement; (7) whether the trial court erred in refusing to amend the judgment or grant a new trial in order to correct mathematical errors in an amount stipulated to at trial; and (8) whether the trial judge erred in awarding interest on a stipulated amount from the date of judicial demand.
Plaintiff, AcadiEnergy, Inc. (hereinafter AcadiEnergy) filed three different suits against various defendants based on a Drilling Agreement and Joint Operating Agreement between the parties. In this suit, our Docket Number 90-595, AcadiEnergy filed a petition against Westover Oil Company (hereinafter Westover), McCord Exploration Company and McCord 1984 Exploration Fund Partnership, seeking recognition of a certain percentage ownership of a mineral interest and recovery of revenues allegedly due for the McCord-Helis No. 2 Well (hereinafter the McCord-Helis No. 2 Well) attributable to certain producing sands. In the consolidated suit, entitled AcadiEnergy Inc. v. McCord Exploration Company, 596 So.2d 1344 (La.App. 3 Cir. 1992), AcadiEnergy filed a petition against Westover, McCord 1984 Exploration Fund Partnership and Charles T. McCord, III for well cost adjustment expenses for drilling and completing the AcadiEnergy-Tucker No. 1 well (hereinafter the Tucker Well) and for unpaid operating expenses for the Tucker Well. In the other consolidated suit, entitled AcadiEnergy, Inc. v. Westover Oil Corporation, 597 So.2d 1 (La.App. 3 Cir.1992), plaintiff filed a petition against Westover, McCord Exploration Company, McCord 1984 Exploration Company, and McCord 1984 Exploration Fund, Ltd. (all McCord groups are hereinafter collectively referred to as McCord), seeking recognition of a certain percentage ownership of a mineral interest and recovery of revenues allegedly due for the McCord-Helis No. 1 well (hereinafter the Helis Well).
Defendants filed an answer in each suit denying plaintiff's allegations and a reconventional demand in the latter suit alleging that AcadiEnergy had forfeited its interest in the Helis Well and seeking judgment to require AcadiEnergy to assign its interest in the Helis Well to defendants. These three lawsuits were consolidated for trial in the trial court and remain consolidated on appeal. As the three suits involve substantially the same facts and applicable law, all three suits will be discussed in this opinion rendered in the first consolidated appeal, our Docket Number 90-595, but we will render a separate judgment in the consolidated appeals. Plaintiffs then filed a Consolidated Supplemental, Amending, and Restated Petition in the three consolidated suits and Westover and McCord then filed an Answer to the Restated Petition and a Consolidated, Supplemental, Amending, and Restated Reconventional Demand. Defendants' Restated Reconventional Demand in each consolidated suit alleged that AcadiEnergy had improperly billed defendants for certain operating costs on the Tucker Well and sought recovery for the amounts allegedly improperly withheld by AcadiEnergy from production on the Tucker Well.
Defendants complied with AcadiEnergy's demands in the first suit for amounts due on the McCord-Helis No. 2 well, so the issues in that suit were not tried by the district court and are not before us. A trial was held on the merits of the remaining two suits and, at the conclusion of the trial, the trial judge rendered oral reasons *1337 for judgment ruling in favor of AcadiEnergy and against defendants ordering a well cost adjustment on the Tucker Well, in favor of AcadiEnergy and against defendants ordering an assignment of defendant's interest in the Helis Well and payment of production from the Helis Well due to AcadiEnergy, and in favor of defendants and against AcadiEnergy on the reconventional demand for certain operating costs improperly withheld from the Tucker Well production. A formal written judgment was signed. All defendants timely suspensively appealed. After the consolidated appeals were lodged in this Court, all of the McCord defendants compromised and settled their differences with AcadiEnergy and filed a motion to dismiss their appeals. Thus, only the claims of Westover remain for resolution on these appeals. Westover has specified eight assignments of error. We reverse the trial court judgment awarding a well cost adjustment to AcadiEnergy on the Tucker Well and affirm the trial court judgment in all other respects.

FACTS
AcadiEnergy, Westover, and McCord executed a Drilling Agreement and Joint Operating Agreement effective March 20, 1984. The purpose of these agreements was to explore and develop oil and gas attributable to certain acreage above the Iberia Salt Dome that each party leased and which was contiguous. Under these agreements an initial well was to be drilled. These agreements provided that they were "limited to the management and operation of the acreage encompassed within the unit formed for the initial well and is limited also to a depth of one hundred feet below such unitized sand, which area shall be referred to as `Contract Area.'" The "initial well" to be drilled was the Tucker Well.

TUCKER WELL
On May 23, 1984, AcadiEnergy, as operator, commenced operations for the drilling of the initial well, the AcadiEnergy-Helis No. 1 well, later renamed the AcadiEnergy Tucker No. 1 well. The Tucker Well was completed and began producing in the late summer of 1984.
By Office of Conservation Order Numbers 860-0-1 and 860-K-1, effective August 22, 1984, the Commissioner of Conservation agreed to establish the geographic unit for the Tucker Well suggested by the parties for the exploration and production of oil and gas from the MA-2 RB SUA (hereinafter MA-2 sand) and MA-3 RB SUA (hereinafter MA-3 sand) sands, respectively. The parties were required to present additional geological information within six months in order to better establish the geology of the area. After obtaining additional geological data, the Commissioner of Conservation revised the old unit and created a new unit by Order Numbers 860-0-2 and 860-K-2. These new orders were effective on September 25, 1985. The Commissioner of Conservation further revised the unit again by Order Numbers 860-0-3 and 860-K-3 and these new orders were effective on July 8, 1986.
The parties agreed in their Drilling Agreement to share all costs in the drilling and completion of the initial well as follows: AcadiEnergy, 50%; McCord, 25%; and Westover, 25%. After the various revisions of the unit around the Tucker Well, the interests of AcadiEnergy, Westover, and McCord in the MA-2 and MA-3 sands changed because of the changes from the original geographic unit suggested by the parties to the subsequent geologic unit formed by the Commissioner.
Due to these resulting changes of mineral ownership in the unit, caused by the revisions of the unit by the Commissioner of Conservation, AcadiEnergy filed suit against Westover, McCord 1984 Exploration Fund Partnership and Charles T. McCord, III, claiming defendants owed it well cost adjustment expenses and operating expenses, under the terms of the Drilling Agreement, on the Tucker Well.

HELIS WELL
After production was obtained on the Tucker well, Westover had to drill another *1338 well, in order to meet the terms of its lease on acreage located outside the unit created for the Tucker Well, or it would have to release its lease as to such acreage.
The Joint Operating Agreement executed by the parties set forth, among other things, the manner in which the initial and subsequent operations were to be conducted on the contract area covering the leased acreage controlled by the parties. Article VI(B)(1) specifically set forth the requirements in proposing subsequent operations to the initial well. Pursuant to Article VI(B)(1) of the Joint Operating Agreement, Westover sent a proposal letter for drilling another well in the contract area to AcadiEnergy and McCord. An additional letter was sent by Westover on August 3, 1984 indicating a change in the objective sand. On September 4, 1984, AcadiEnergy sent a letter to Westover informing Westover that the objective sand was not within the contract area of the Joint Operating Agreement and stating that the proposal for drilling another well was premature as the unit for the Tucker Well had not been established. On September 10, 1984, Westover sent a letter to AcadiEnergy, informing AcadiEnergy that a unit for the Tucker Well had now been established and that they were changing the depth of the objective sand to come within the contract area.
On September 14, 1984, AcadiEnergy sent a letter to Westover declining to participate in the well proposed by Westover. AcadiEnergy suggested another possible location where they would be willing to participate in a well. AcadiEnergy also expressed a desire to participate should Westover consider changing the proposed bottomhole location. Westover then sent by telecopy to AcadiEnergy a revised location plat for the well. AcadiEnergy responded by letter dated October 9, 1984 which informed Westover that they could not support a well at the proposed location and then suggested a new location.
On October 11, 1984, McCord sent Westover a proposal for drilling a well with a new cost estimate and a plat showing a surface location. McCord sent Westover another letter on November 2, 1984 indicating a bottom hole location, a surface location, and a well cost estimate. On November 13, 1984, McCord sent Westover another letter suggesting a new surface location and bottom hole location. Westover then sent McCord a letter on November 14, 1984 stating that the well must be drilled in accordance with the original proposal that AcadiEnergy had declined to participate in and, also, stating that the new bottom hole location proposed by McCord was not acceptable.
On January 3, 1985, McCord sent a letter to AcadiEnergy informing them that McCord and Westover would soon be drilling another well according to the proposed bottom hole location of McCord in which AcadiEnergy had declined to participate. McCord then advised that there was now a more refined bottom hole location and a new surface location. McCord also stated that it was not seeking AcadiEnergy's participation and, if the change made a difference, the well would be moved back to the original proposed location. In response to McCord's letter, AcadiEnergy sent a letter to McCord on January 10, 1985, requesting a plat that showed the surface location and the bottom hole location and informed them that after receiving this information they would then be able to make a decision whether or not to participate. AcadiEnergy never received this requested information. The Helis Well was drilled and completed as a producer by McCord and Westover.
On March 2, 1987, AcadiEnergy filed suit against Westover, McCord Exploration Company, and McCord 1984 Exploration Fund Partnership, alleging it owned an interest in the Helis Well, in which Westover and McCord were the working interest owners, and, therefore, under the terms of the Joint Operating Agreement, AcadiEnergy sought an accounting and its share of revenues derived from the Helis Well.
Defendants filed an answer denying plaintiff's allegations and a reconventional *1339 demand alleging that AcadiEnergy had forfeited its interest in the Helis Well and asking that AcadiEnergy be ordered to assign its interest in the Helis Well to defendants.
Additionally, AcadiEnergy filed another suit against Westover, McCord Exploration Company, and McCord 1984 Exploration Fund Partnership for revenues due for the McCord-Helis No. 2 well.
The three suits were consolidated in the trial court. Defendants complied with the demands in the petition for revenues due on the McCord-Helis No. 2 oil well so that suit was not before the trial court and is not before this court on appeal at this time.
A trial was held on the merits of the remaining two lawsuits on July 11, 1989 through July 18, 1989. The trial judge found in favor of AcadiEnergy and against defendants on the demand for a well cost adjustment on the Tucker Well. In his oral reasons for judgment, the trial judge stated that the parties intended that the equities and risks remain constant throughout the life of their agreement and in interpreting the contract found that it provided that any unitization of the well would precipitate an adjustment of the cost of drilling, completing, and operating the Tucker Well. The trial judge stated that this was a situation where the more information a party had, the more informed his decision to consent would be. The trial judge rendered judgment in favor of AcadiEnergy and against defendants on AcadiEnergy's demand for an assignment of defendants' interest in the Helis Well. The trial judge awarded the stipulated amount of $336,472.00, which the parties agreed would be owed, with legal interest to AcadiEnergy, for the failure of defendant to allow AcadiEnergy to participate in the Helis Well. The trial judge found in favor of defendants and against AcadiEnergy on the defendants' reconventional demand for improper set off of operating costs in the amount of $10,000.00. A formal written judgment was signed on August 17, 1989.
Defendants filed a Rule For New Trial Or, In The Alternative, To Amend Judgment on September 5, 1989. The trial judge denied defendants' rule that same day. All defendants timely suspensively appealed the trial judge's ruling. Defendants, the McCord Group, have compromised and settled their differences with AcadiEnergy after their appeal was perfected and dismissed their appeal leaving only Westover's claims for resolution on appeal.
Westover appeals specifying the following eight assignments of error:
(1) The trial court erred in holding that the March 20, 1984, Drilling agreement by and between McCord, Westover, and AcadiEnergy provided for a well cost adjustment upon subsequent revisions to the original unit established by the Office of Conservation for the Tucker Well;
(2) The trial court erred in not applying La.R.S. 30:10 to the facts of this case;
(3) The trial court erred in the calculation of such well cost adjustment;
(4) The trial court erred in awarding interest on the amount of such adjustment when it ruled that interest would accrue from the date of the second invoice forwarded Westover by AcadiEnergy rather than from the date of judgment;
(5) The trial court erred in awarding Westover interest on its $5,000.00 judgment against AcadiEnergy only from the date of judicial demand rather than from the date such funds attributable to the interests of Westover in the proceeds of production from the Tucker Well were withheld by AcadiEnergy to offset operating costs which were improperly billed to Westover by AcadiEnergy;
(6) The trial court erred in holding that AcadiEnergy did not forfeit its interest in the Helis Well under the express terms of Article XV. D. of the Operating Agreement;
(7) The trial court erred in refusing to amend the judgment or to grant a new trial in order to correct mathematical errors *1340 in the calculation of the amount stipulated at the trial to be owed by Westover to AcadiEnergy for AcadiEnergy's share of the proceeds of the sale of the production from the Helis Well after deducting AcadiEnergy's share of the costs of drilling, completing, equipping, and operating said well; and
(8) The trial court erred in awarding interest on the stipulated amount from the date of judicial demand rather than from the respective dates that AcadiEnergy's share of the revenues derived from the Helis Well in excess of its share of the costs of drilling, completing, equipping, and operating the Helis Well would have been due and payable.

THE TUCKER WELL
Section D of the Drilling Agreement, providing for a well cost adjustment, reads as follows:
"D. AcadiEnergy, McCord, and Westover agree to pay a percentage share each of all costs actually incurred by AcadiEnergy in the drilling and completion of the Initial Well as follows: AcadiEnergy50%; McCord25%; and Westover25%. AcadiEnergy, McCord, and Westover further agree that upon unitization of the reservoir or reservoirs of the Initial Well, either through voluntary agreement or by Order of the Commissioner of Conservation for the State of Louisiana, all costs incurred in connection with the drilling, completion and operation of the Initial Well shall be adjusted to reflect the participation in the aforementioned unit by AcadiEnergy, McCord, and Westover. The parties to this Agreement further agree that if the percentage amount paid for the drilling and completion of a well is greater or lesser after unitization than its initial percentage participation, the well cost shall be adjusted to reflect the party's post-unitization interest. In the event a party is responsible for additional cost due to the readjustment, an invoice shall be sent to the party for the added cost. If the invoice for the readjusted cost is not paid within sixty (60) days, fifteen percent (15%) per annum interest charge from the date of the invoice until paid shall be added."
Westover claims that this agreement provides for a well cost adjustment only on the initial unitization of the Tucker Well and that it does not provide for a well cost adjustment for subsequent revisions to the unit after the initial unitization.
There are two parts to Section D of the Drilling Agreement. The first part clearly refers to the "Initial Well." It provides how the parties are to share the costs incurred in the initial well and further states that, upon unitization of the initial well, the costs incurred would be adjusted to reflect the participation by the parties.
The second part of Section D of the Drilling Agreement is what AcadiEnergy claims gives rise to a well cost adjustment upon any revisions of the conservation unit for the Tucker Well. As the trial judge noted in his oral reasons for judgment:
"The next part causes problems. It says, `The parties to this agreement further agree that if the percentage amount paid for the drilling and completion of a well is greater or lesser after unitization then its initial percentage participation though [sic] well cost shall be adjusted to reflect the party's post unitization interest. In the event a party is responsible for additional cost due to the re-adjustment, an invoice shall be sent,' et cetera.... The Court finds that that could be interpreted eitherone of two ways, either the first part of the paragraph simply states the guts of the agreement, which is that there will be an adjustment of the cost if there is a unitization. And the second part of the paragraph being more specific as to how that is to be accomplished. If there's an overpayment, there will be an invoice. Or it could be interpreted to mean that the second part of the paragraph wishes to address itself more specifically to future unitizations. The Court finds on that *1341 issue that it was the intent of the parties that the equities and the risk remain constant throughout the life of their agreement. With that said, the only sensible conclusion that this Court can reach in interpreting this contract is that any unitization of any well affected by this contract will precipitate an adjustment of cost as it pertains to that unitization or reunitization. So, the Court finds that the well adjustment issue covers all unitizations, initial and subsequent."
We agree with the trial judge that the second part of Section D of the Drilling Agreement is ambiguous. The second part of Section D refers in general to "a well." It goes on to state that if the amount paid for the drilling and completion for "a well" is greater or lesser after unitization then the initial percentage participation, the "well cost" would be adjusted to reflect a party's post-unitization interest. There is no indication as to what unitization the second part of Section D refers to. The trial judge determined that even though Section D of the Drilling Agreement was ambiguous that it was the intention of the parties that the equities and risks remain constant throughout the life of their agreement and in interpreting the contract found that any unitization of the well would precipitate an adjustment of costs. For this reason the trial court allowed a well adjustment cost for the Tucker Well upon revisions of the unit for the well.
A trial judge's factual findings pertinent to the interpretation of a contract are not to be disturbed by an appellate court unless manifest error is shown. However, where the appellate court's interpretation of the contract in question is not premised upon any factual findings made at the trial level but is, instead, based upon its review and examination of the contract itself, then the manifest error rule does not apply. Conoco, Inc. v. Tenneco, Inc., 524 So.2d 1305 (La.App. 3 Cir.1988), writ den., 525 So.2d 1048 (La.1988). In the present case, we find that the trial judge incorrectly interpreted the Drilling Agreement.
La.C.C. Art. 2056 provides that, in case of doubt, a provision in a contract must be interpreted against the party who prepared the contract. In the present case, the evidence shows that AcadiEnergy prepared the Drilling Agreement. In reviewing and interpreting this contract we find that the Drilling Agreement only addressed the initial unitization of the Tucker Well. We find that the Drilling Agreement makes no provision for well cost adjustments to the Tucker Well because of subsequent unit revisions after the initial unit for the well was formed by the Commissioner of Conservation.
For these reasons, we find that the Drilling Agreement between the parties does not provide for well cost adjustments on subsequent revisions of the conservation unit for the Tucker Well and reverse the trial court judgment.
Therefore, we find that no well cost adjustment is due upon subsequent revisions by the Commissioner of Conservation of the conservation unit for the Tucker Well. We also note that it would be clearly inequitable to have well cost adjustments based on subsequent revisions of the unit, after all the drilling costs had already been paid out of production, when there is no provision to also adjust the production payments received by the parties based on subsequent revisions of the unit.
Since we have found that no well cost adjustment is due, there is no need to discuss the other issues raised by Westover relating to the Tucker Well.

THE HELIS WELL
Westover alleges that AcadiEnergy forfeited its interest in the Helis well under the terms of the Operating Agreement. The Operating Agreement Section B(1) provides for proposed operations or subsequent operations as follows:
"B. Subsequent Operations:
1. Proposed operations: Should any party hereto desire to drill any well on *1342 the Contract Area other than the well provided for in Article VI.A, or to rework/deepen or plug back a dry hole drilled at the joint expense of all parties or a well jointly owned by all the parties and not then producing in paying quantities, the party desiring to drill, rework, deepen or plug back such a well shall give the other parties written notice of the proposed operation, specifying the work to be performed, the location, proposed depth, objective formation and the estimated cost of the operation. The parties receiving such a notice shall have thirty (30) days after receipt of the notice within which to notify the party wishing to do the work whether they elect to participate in the cost of the proposed operation. If a drilling rig is on location, notice of a proposal to rework, plug back or drill deeper may be given by telephone and the response period shall be limited to twenty-four hours inclusive of Saturday, Sunday and legal holidays. Failure of a party receiving such notice to reply within the period above fixed shall constitute an election by that party not to participate in the cost of the proposed operation. Any notice or response given by telephone shall be promptly confirmed in writing."
As indicated by the terms of the Operating Agreement, there are five facts of which a party must be given written notice. These facts are the work to be performed, the location, the proposed depth, the objective formation, and the estimated cost of the operation.
We agree with the trial judge that AcadiEnergy did not receive written notice of these five facts for the proposed Helis Well that was subsequently drilled and completed. Westover claims that they drilled to the same objective formation and since AcadiEnergy had indicated that they did not like that formation there was no need to make a new proposal when the objective formation remained the same. However, as the facts and correspondence between the parties indicate, AcadiEnergy expressed a desire to participate should Westover change the location and AcadiEnergy also requested additional information on the proposed well that was eventually drilled, which information they never received. Under the terms of the Operating Agreement between the parties, AcadiEnergy never received written notice of the five facts required on the proposal to drill the Helis Well, before it was drilled, in order to make a determination of whether to participate. Therefore, we agree with the trial court that AcadiEnergy never declined to participate in the Helis Well.
Since we have determined that AcadiEnergy did not forfeit its interest in the Helis Well, we next address the issue of whether the trial judge was correct in refusing to amend the judgment or grant a new trial in order to correct mathematical errors in the amount stipulated to be owed by Westover to AcadiEnergy for AcadiEnergy's share of the proceeds of the sale of production from the Helis Well. At trial, the parties stipulated that if the trial judge found in favor of AcadiEnergy on the issue of participation in the Helis Well, defendants would owe AcadiEnergy $336,472.00 as of April, 1989, for its share of production from the Helis Well. No other evidence was introduced at trial on the amount owed.
Westover relies upon La.C.C. Art. 3078 which provides that:
"Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected."
In the present case, there is no evidence in the record that there was an error in calculation. The only evidence in the record consists of the stipulation itself which provides for an amount owed. Defendants attached evidence of the method of calculation to their Rule For New Trial. However, items which appear in the record as an attachment to a rule cannot be considered *1343 on appeal from the judgment denying the new trial when the items were never formally introduced into the record as evidence and are not properly before us for appellate review and consideration. Perkins v. Fontenot, 548 So.2d 369 (La. App. 3 Cir.1989).
Furthermore, if we were to consider the calculations attached to the Rule For New Trial, we do not find that the trial court abused its discretion in denying the rule on this ground. The parties entered into a compromise. A compromise is a contract. La.C.C. Art. 3071. Legal agreements have the effect of law upon the parties and the courts are bound to give legal effect to all such contracts according to the true intent of the parties. Smith v. Leger, 439 So.2d 1203 (La.App. 1 Cir.1983). In Sixth District Building & Loan Ass'n v. Mattes, 181 So. 618 (La.App. Orleans 1938), the plaintiff was allowed to correct an error in the calculation of the principal due on a mortgage note on which a settlement had been reached. However, that case can be distinguished from the present case because, in that case, the court had in evidence before it the figures and calculations upon which the settlement was based. In the present case there are no figures mentioned in the stipulation or in the record showing how AcadiEnergy and defendants reached their compromise and stipulation of the amount owed. The only evidence in the record is the stipulation itself of the amount owed. Therefore, we find no basis in the record which will support Westover's contention that there was an error in the calculation of the compromise and stipulation of the amount owed that could be corrected under the provisions of La.C.C. Art. 3078. For these reasons, we find the trial judge was correct in denying defendants' rule to amend the judgment or grant a new trial on the basis of mathematical errors in arriving at a stipulation of the amount owed.
Finally, we address the issue of whether or not the trial judge was correct in awarding interest on the stipulated amount due AcadiEnergy from the date of judicial demand. Westover alleges that interest should be due from the respective date that AcadiEnergy's share of the revenues derived from the Helis Well, in excess of its share of the costs of drilling, completing, equipping, and operating the Helis Well, would have been due and payable.
As stated earlier, there is no evidence in the record as to when the stipulated amount accrued. These figures were not in evidence and were only attached to the Rule For New Trial. Perkins v. Fontenot, supra holds that evidence not formally introduced into the record is not properly before the appellate court on review and cannot be considered.
AcadiEnergy has been found to be entitled to production from the Helis Well because defendants breached the Operating Agreement and did not give AcadiEnergy sufficient information to make a decision whether or not to participate in the drilling and completion of the Helis Well. Louisiana jurisprudence has established that in a suit for damages resulting from a breach of contract, legal interest attaches from the date of judicial demand. Saragusa v. Dipaola, 290 So.2d 766 (La.App. 1 Cir.1974), writ den., 293 So.2d 185 (La.1974); Whitney National Bank of New Orleans v. Poydras Center Assoc., 557 So.2d 422 (La. App. 4 Cir.1990). The scope of defendants' obligation to AcadiEnergy did not become certain until suit was filed and so, in this case, interest could not accrue until AcadiEnergy filed suit to have its interest in the Helis Well recognized.
For these reasons, we find the trial judge was correct in awarding interest from the date of judicial demand on the amount stipulated to be due to AcadiEnergy from defendants on the Helis Well.
For the foregoing reasons, the judgment of the trial court awarding a well cost adjustment in favor of AcadiEnergy and against Westover on the Tucker Well is reversed and, in all other respects, the trial court judgment is affirmed.
*1344 All costs of this appeal are taxed one-half to plaintiffs-appellees and one-half to defendant-appellant, Westover Oil Company.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.