## CALHOUN v. SERIO. *

No. 5075.

Court of Appeal of Louisiana.
Second Circuit.

June 4, 1935.

G. P. Bullis and J. M. Reeves, both of Vidalia, for appellant.

Hugh Tullis, of Vidalia, for appellee.

TALIAFERRO, Judge.

Plaintiff obtained judgment for several hundred dollars against Antonio Serio, of Ferriday, in the parish of Concordia, La. ([La. App.] 154 So. 465), issued execution thereon, and caused the sheriff to seize all of the right, title, and interest of said Serio, as an alleged partner in the alleged partnership of A. Serio & Son, operating the Serio Cash Grocery in said town of Ferriday. At the sheriff's sale plaintiff became the adjudicatee of the alleged rights of Antonio Serio thus seized and advertised. The present action was instituted by him against Guy Serio, alleged to be the other partner in said business, to liquidate its affairs under the direction of the court.

Defendant denies that there was ever a partnership by the name of A. Serio & Son, and denies that Antonio Serio ever owned any interest in the business conducted by him (defendant) in Ferriday under the trade-name of "Serio Cash Grocery," but avers that said business is now, and has at all times heretofore been, owned exclusively by him; and that plaintiff took nothing by the sheriff's sale.

Upon the issues tendered by the opposing allegations, the case was tried. The question of fact involved was resolved by the lower court against plaintiff, and he brings this appeal.

Appellee moved to dismiss the appeal for the reason that as the appeal was asked for and granted in open court and as the record discloses that said minutes were not then or thereafter approved and signed by the judge, said order of appeal is null and void and without effect.

### Motion to Dismiss Appeal.

It is conceded by appellee, as the certified minutes in the record accurately disclose, that the appeal was moved for in open court and at the same time granted by the court. The record does not disclose that the minutes of that day were formally approved and signed by the judge, and it is because of the lack of such formal approval and signing that appellee contends the appeal should be dismissed. His counsel concedes, however, that there is no codal or statutory law requiring that, for court minutes to be effective as such, it is imperative that they be signed by the presiding judge. We know of no such law. It has not been the custom of the court aquo that the judge sign the minutes after being transcribed into the proper record book for preservation.

The clerk of a district court is an integral part of such tribunal, and is charged with the performance of important ministerial functions and duties, among which are these: That he shall keep at least two record books, in one of which he shall set down in order the titles of all causes pending before the court, and in the other he shall set down all the orders and judgments rendered, as well as the motions made by the parties, or their counsel (Dart's Code Prac. arts. 775, 776, 777). This last book is what is commonly referred to as the minute book. It is the invariable custom in all district courts, so far as we are apprised, that the clerk reads aloud in open court each morning the minutes of the proceedings had therein the preceding day. Errors or omissions are then corrected or supplied, and, as thus amended, the minutes are declared approved by the judge. Whether he signs them after being approved is immaterial to their effectiveness. Having been kept by the clerk, they become the acts of the court, and are entitled to the same weight and

credit as though written by the judge himself; and, as said in State ex rel. Attorney General v. Lazarus, 39 La. Ann. 142, 152, 1 So. 361, 368: "In our jurisprudence, the minutes of a court have always been clothed with an authenticity which borders on sanctity."

■ In the present case, the clerk has attached to the record a long list of proceedings in the case, including oral motion for and order granting the appeal, which he certifies to be the true and correct minute entries in the case. The fact that these minutes have not been assailed as to their correctness, and now stand upon the court records as its own acts, raises a strong presumption that they have been approved by the judge. This record, as it stands, meets all the requirements of law and, consequently, is a valid basis upon which the appeal may be sustained. The motion to dismiss is denied.

### On the Merits.

■ Antonio Serio is an illiterate Italian, 67 years old. He can neither read nor write English or Italian. Guy Serio, 27 years old, is his son. He appears to have a practical education and to possess the happy faculty, present in many of his race, of being able to earn and save money, mainly by his efforts as a retail vendor of merchandise.

Antonio Serio, during the minority of all his sons, operated a store in a building in Ferriday, owned by plaintiff, under the style of "A. Serio & Son." However, it appears that it was exclusively owned by the elder Serio. The building and contents were consumed by fire on Christmas night, 1927. He then engaged in the hotel and restaurant business for a while, but, becoming hopelessly insolvent, he surrendered his meager assets to a trustee selected by his creditors, and in the end they received less than 10 per cent. of their accounts. However, this settlement with them did not extinguish the balance due on their accounts, although Serio thought he would be fully discharged therefrom. See Calhoun v. Serio (La. App.) 154 So. 465. It did leave him without credit or assets. Soon thereafter arrangements were made with a local wholesale grocery firm to extend him credit to the amount of $100. With this assistance he opened a small grocery store on the gravel highway in the western part of Ferriday in the name of "S. Serio," and continued the business for several months. It was not successful. He paid $40 per month rent for the store building, and this drain, coupled with poor business conditions, soon undermined the stability of his business. Defendant and another son came to his financial

rescue to a material extent. Defendant was then earning a fairly good competence in Lake Providence, La. He accumulated about $1,000 and returned to Ferriday in the early part of the year 1930. The testimony sustains defendant's contention that the value of the stock of goods of Antonio Serio at this time was not in excess of $300, in fact, nearer $200, and that he was owing thereon approximately $125. He had no store fixtures. Defendant then leased another building, more favorably located, and took into his possession his father's stock of goods, moved same to the new location, and paid the amount due thereon. He took the position that, in view of the fact that his money had been used by his father in paying rents and purchasing merchandise, this small stock was in reality his own. The elder Serio at least acquiesced in this attitude of the son. From this time on defendant has been in active charge of the business. It has grown prosperous. It has been and is now conducted under the tradename of "Serio Cash Grocery." He and his father have sleeping quarters in the rear of the building. The father is dependent upon defendant for subsistence, etc. His health is not good, and he is physically unable to render assistance worth while to the business.

The method of defendant's acquisition of the elder Serio's meager equity in his stock of goods is of no importance. The fact that he did take it over and make it his own, paying its liabilities, under the circumstances, should not arouse suspicion. The father had proved his inability to succeed as a merchant. Another fact that argues strongly against the probability that defendant would carry him as a partner in the business is that Antonio Serio was then hopelessly insolvent. Any property he might accumulate would be subject to seizure by his creditors, and, if seized, destroy or materially cripple the business. He was afraid to carry on the business on the gravel road in his own name, using that of "Sam Serio," a dead brother; his own sons then being minors.

Plaintiff's contention is that these two Serios are partners and own the "Serio Cash Grocery" business. He submits proof of some isolated facts tending to support this contention, but arrayed against these facts and any inconclusive inferences deductible therefrom, we have the positive testimony of defendant and his father, supported by many strong circumstances, that the business is owned in its entirety by the son. Among these supporting facts and circumstances, we mention the following: That the new location was rented by Guy Serio in his own name, he then being of

age; the rent thereon was paid by his own checks, on a local bank, or by goods sold to the lessor from the store; the bank account, supplemented from time to time by deposits from the store's business activities, and reduced intermittently by checks to discharge its liabilities, was ·carried in the name of "Guy Serio"; valuable fixtures were purchased, as the business expanded, in the name of "Serio Cash Grocery" by Guy Serio, and notes given and chattel mortgages executed in that name; and, during the last four years at least, that part of the commercial world having business dealings with "Serio Cash Grocery" understands that Guy Serio is the sole owner thereof. Adoption and use of a trade-name, as was done in this instance, is permissible under the law; no intent to defraud or mislead the public being present. J. R. Kent & Co. v. Mojonier, 36 La. Ann. 259.

█ No presumption of the existence of a partnership arises from the use of such a trade-name. If the words "and Company" or "& Company," had been employed as a suffix to the trade-name, the situation would to some extent be altered. Rev. St. § 2668. In re Pelican Insurance Company, 47 La. Ann. 935, 17 So. 427; Wolfe v. Joubert et al., 45 La. Ann. 1100, 13 So. 806, 21 L. R. A. 772.

Some stress is laid on the fact that the occupation license for the years 1930 and 1931, issued to Sam Serio when, according to defendant, he was the exclusive owner of the business. Presumably the 1930 license issued before the goods were taken over by defendant. The sheriff testified that he invariably sent one of his deputies out to collect occupation licenses; that persons due to secure such licenses would not come to his office to get them. He could not recall who actually paid for the Serio licenses for 1930 and 1931. It is entirely probable that the deputy simply followed the form of the old license.

The fact that a wholesale merchant of Ferriday, after Guy Serio took over his father's goods early in 1930, continued to carry the account for a year or more against Sam Serio, and was of the impression that the business continued that of Antonio Serio, does not, even when considered in the light of other facts and circumstances depended upon by plaintiff, prove the falsity of defendant's contention. In some respects this merchant's testimony is patently erroneous, though ·given in good faith; it is not improbable that he could have been in error in other respects.

We have studied the record diligently, and turn from it convinced that the lower court's judgment is manifestly correct. It would have to appear manifestly erroneous to justify disturbance from us.

█ Plaintiff carried the burden of establishing the correctness of his contentions. He has signally failed to do this.

Judgment affirmed.