841 So.2d 1039 (2003)
Richard P. CLARK d/b/a Clark Productions.
v.
CLARENDON INSURANCE COMPANY.
No. 02-1314.
Court of Appeal of Louisiana, Third Circuit.
March 26, 2003.
*1041 J. Chris Guillet, P. Jody Lavergne, Scofield, Gerard, Veron, Singletary & Pohorelsky, Lake Charles, LA, for Defendant/Appellant, Clarendon National Insurance Company.
Dennis R. Sumpter, Sumpter Law Offices, APLC, Sulphur, LA, for Plaintiff/Appellee, Richard P. Clark d/b/a Clark Productions.
Court composed of JIMMIE C. PETERS, MARC T. AMY, and MICHAEL G. SULLIVAN, Judges.
SULLIVAN, Judge.
Clarendon National Insurance Company (Clarendon) appeals a default judgment rendered against it in favor of Richard P. Clark d/b/a Clark Productions. For the following reasons, we affirm in part, amend in part, reverse in part, and remand with instructions.

Facts
On April 15, 2002, Mr. Clark reported to the Calcasieu Parish Sheriff's Department (CPSD) that his truck had been stolen from the motel in Lake Charles where he stayed overnight on April 14. Later that morning, the truck was found at another location in Lake Charles. Mr. Clark testified that the truck had been wrecked, the windows had been broken out of it, and the interior of the cab had been burned. He had the truck towed to a storage facility.
Mr. Clark had a commercial automobile insurance policy with Clarendon which provided coverage for the truck. In March, Clarendon sent Mr. Clark a notice *1042 of cancellation which indicated that his policy was being cancelled effective April 15, 2002, at 12:01 a.m. The notice indicated that the cancellation was made for underwriting reasons. Mr. Clark reported the truck stolen to his insurance agent on April 15. Two days later, a representative of Clarendon notified him of his claim number. By letter dated June 7, 2002, Clarendon notified him that his claim was still being investigated. Then, in early July, Clarendon notified him that its investigation was "inconclusive" because it had not been determined whether the truck had been stolen before or after the cancellation of his policy. Mr. Clark testified that Clarendon continuously told him that his claim was being investigated.
On July 23, Mr. Clark filed suit against Clarendon, seeking to recover damages, penalties, and attorney fees. A preliminary default judgment was entered against Clarendon on September 9. Then, on September 13, Mr. Clark appeared in open court and confirmed the default judgment. At the conclusion of the hearing, the trial court awarded him $28,635.50 for his losses, a 10% penalty of $2,863.55, attorney fees in the amount of $9,545.16, judicial interest from the date of demand, and all costs of the proceeding. Clarendon appeals the judgment, assigning a number of errors.

Standard of Review
"In order for a plaintiff to obtain a default judgment, `he must establish the elements of a prima facie case with competent evidence, as fully as though each of the allegations in the petition were denied by defendant.'" Sessions & Fishman v. Liquid Air Corp., 616 So.2d 1254, 1258 (La.1993), quoting Thibodeaux v. Burton, 538 So.2d 1001, 1004 (La.1989). A default judgment is presumed correct and to have been rendered upon sufficient evidence. Perkins v. Fontenot, 548 So.2d 369 (La. App. 3 Cir.1989). However, when there is a transcript of the confirmation hearing, as in this case, the presumption does not exist. Id.
Appellate review of default judgments is restricted to a determination of the sufficiency of the evidence offered in support of the judgment. State v. Fifteen Thousand Four Hundred Thirty-One Dollars & Other Prop., 95-1334 (La.App. 3 Cir. 3/6/96); 670 So.2d 693.

Entry of Preliminary Default
Clarendon's first assignment of error is that the record does not contain a preliminary default as required by La. Code Civ.P. art. 1701. The original transcript did not contain a preliminary default; however, the record was supplemented with minutes prepared by the clerk of court which show that a preliminary default was entered on September 9, 2002. Clarendon now argues that the minutes are without effect because they were not signed by the trial judge.
Courts must maintain minute books in which "[a]ll motions made, all proceedings conducted, and all judicial acts of the court during each day" are recorded. La.Code Civ.P. art. 254(A), (C), respectively. Clerks of court appoint minute clerks whose duties include keeping and transcribing the minutes of court. La.Code Civ.P. arts. 254, 256.
In Calhoun v. Serio, 161 So. 772 (La. App. 2 Cir.1935), the plaintiff argued that the defendant's oral motion for appeal was without effect because the minutes reflecting that the motion had been made were not signed by the trial judge. The court rejected the argument, stating: "Whether [the trial judge] signs [the minutes] after being approved is immaterial to their effectiveness. Having been kept by the clerk, they become the acts of the court, *1043 and are entitled to the same weight and credit as though written by the judge himself." Id. at 773-74.
This assignment is without merit.

Loss of Vehicle
Clarendon's next assignment of error is the trial court's award for the loss of Mr. Clark's truck. The trial court awarded Mr. Clark the Blue Book value of the truck prior to the accident, $22,645.00. Clarendon urges that this was error because Mr. Clark did not prove that it was a total loss. Further, Clarendon asserts that, even if Mr. Clark did establish that the truck was a total loss, the award was improper because its salvage value was not established.
Mr. Clark testified that the truck was a total loss. The basis for this testimony was the opinions of an officer with the CPSD, someone with the fire department, and a representative of the towing company that the truck was a total loss. Pictures of the truck reflect that the windows were broken, the cab was destroyed by fire, and the right rear panel of the truck was damaged.
In order to recover under an insurance policy it is the burden of the plaintiff to establish every fact essential to his recovery and to establish that the claim falls within the policy coverage. Ceasar v. Great Falls Ins. Co., 371 So.2d 1286 (La.App. 3 Cir.1979). Under our law an automobile is deemed a total loss when the cost of repairs exceeds its value before the accident. To prove a total loss a plaintiff must introduce evidence not only as to the car's prior value, but also as to how much it would cost to repair the automobile. Nicholas v. Continental Insurance Company, 296 So.2d 468 (La.App. 4 Cir.1974). And it has been held that proof of salvage value is essential to a recovery for the total loss of a vehicle. Burton v. Southwestern Gas & Electric Company, 107 So.2d 67 (La.App. 2 Cir.1958); Cheramie v. Jones, 327 So.2d 601 (La.App. 4 Cir. 1976).
Roy v. Commercial Union Assur. Co., 385 So.2d 1273, 1275-76 (La.App. 3 Cir. 1980). See also Coco v. Southern United Fire Ins. Co., 96-135 (La.App. 3 Cir. 11/13/96); 682 So.2d 1014, writ denied, 96-2977 (La.2/21/97); 688 So.2d 517.
The record does not contain the evidence necessary to establish whether Mr. Clark's truck was a total loss and, if so, its salvage value. Accordingly, we remand this matter to the trial court for determination of this issue. Clarendon does not assign as error the trial court's valuation of the truck at $22,645.00 before the fire; therefore, it is not an issue to be considered on remand.

Contents of the Truck
The trial court awarded Mr. Clark $1,945.00 for property in the truck that was stolen or destroyed. Mr. Clark testified that he and his girlfriend had some cash in the truck and that he had property in the truck that was stolen or destroyed. He introduced into evidence an itemized list of the cash and property with assigned values. The trial court denied the claim for cash. Clarendon maintains that Mr. Clark should not have been awarded damages for the following items because the policy excludes them from coverage: two cellular telephones, a gas sampler, a gas computer, compact discs and cassette tapes, a calculator, and a digital voltage meter.
An insured has the burden of proving the existence of insurance coverage, but the insurer has the burden of proving that an exclusion is applicable. Tunstall v. Stierwald, 01-1765 (La.2/26/02); 809 So.2d 916.
*1044 Subpart B(4) of Section III of Clarendon's policy, which is entitled "Physical Damage Coverage," provides in part:
We will not pay for "loss" to any of the following:
a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.
. . . .
c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.
Compact discs and cassette tapes are excluded from coverage by the clear language of Section III, Subpart B.4(a). Therefore, the trial court's award of $250.00 for these items is clear error, and it is reversed.
With regard to the other items of property, the record is insufficient for us to determine whether or not they meet the requirements of the exclusion. For example, the cellular telephones reproduce sound, and the record does not reveal what a gas meter is. For these reasons, we conclude that Clarendon has failed to prove that the remaining items are excluded from coverage.
Clarendon also asserts that Mr. Clark's testimony regarding these items and their values was insufficient to satisfy his burden of proof. Mr. Clark testified that he prepared the list of items and assigned their values. Generally, the owner of property is qualified to testify as to the value of his property. See Dual Drilling Co. v. Mills Equip. Invs., Inc., 97-1010 (La.App. 4 Cir. 1/7/98); 705 So.2d 1246, rev'd on other grounds, 98-343, 98-356 (La.12/1/98); 721 So.2d 853; Landry v. St. Charles Inn, Inc., 446 So.2d 1246 (La. App. 4 Cir.1984). The accuracy of the owner's opinion goes to the weight to be accorded the opinion, not to its admissibility. Id. We find no error with the remainder of the award.

Storage Fees
Mr. Clark was awarded $1,670.00 in towing and storage fees. The storage fees were $1,160.00, $10.00 per day for 116 days. Clarendon asserts that this portion of the award is too high. In the event of a loss, Clarendon's policy required Mr. Clark to "[t]ake all reasonable steps to protect the covered `auto' from further damage" and to "[p]ermit [Clarendon] to inspect the covered `auto' ... before its repair or disposition." Clarendon never inspected the truck.
In a letter dated July 1, 2002, Clarendon notified Mr. Clark's attorney that its investigation indicated that Mr. Clark could not establish that the truck was stolen before the policy lapsed at 12:01 a.m. on April 15, 2002, and recommended that he remove the truck from the storage facility to stop incurring storage fees. A date-stamp on the letter indicates that it was received by Mr. Clark's attorney on July 3.
An owner has a reasonable time, usually considered to be thirty days, to leave his automobile in storage after it has been determined to be a total loss. Moxley v. Cole, 97-1582 (La.App. 3 Cir. 2/3/99); 736 So.2d 249, writ denied, 99-632 (La.5/7/99); 740 So.2d 1284. To protect his interests, Mr. Clark had to store the truck for inspection by Clarendon. Clarendon did not notify him that it did not intend to inspect the truck. However, in its July 1 letter, Clarendon notified Mr. Clark that its investigation indicated that he could not establish that the truck was stolen before his policy was cancelled and *1045 informed him that he should remove the truck from storage.
Under these circumstances, we find it reasonable for Mr. Clark to have left the truck in storage until his attorney received the July 1 letter. At that point, he knew that Clarendon questioned his claim and did not accept responsibility for the storage costs. Accordingly, we reduce the trial court's award by $350.00, which represents storage fees that accumulated after July 3. The remainder of the award for towing and storage, $1,320.00, is affirmed.

Sales Tax
The trial court awarded Mr. Clark 8.75% sales tax on all of his damages. Clarendon argues that the trial court's award of sales tax was error. The trial court's award of sales tax included sales tax on the towing and storage fees, which were not taxed. This portion of the award was clear error and is reversed.
Clarendon cites State Farm Mutual Automobile Insurance Co. v. Berthelot, 98-1011 (La.4/13/99); 732 So.2d 1230, in support of its position. In Berthelot, State Farm's insured was involved in an accident which rendered his car a total loss. The insured filed a claim for the loss with State Farm. State Farm calculated the claim, including sales tax in its calculation, and paid the insured. State Farm then sought to collect what it had paid from the tortfeasor and his insurer. The insurer refused to reimburse State Farm for the sales tax. The supreme court denied State Farm's claim for the sales tax, holding that a tort victim is not entitled to recover from the tortfeasor the sales tax paid on an automobile that was a total loss.
Mr. Clark responds that the 2001 amendment to La.Civ.Code art. 2315, which provides: "Damages shall include any sales taxes paid by the owner on the repair or replacement of the property damaged[,]" mandates an award of sales tax. However, Clarendon asserts that under the terms of its policy it is not obligated to pay sales tax and that its policy, not Article 2315 which applies to tort claims, controls this issue.
First, we must determine whether Clarendon's policy or Article 2315 governs this issue. A similar issue was addressed in Campbell v. Markel American Insurance Co., 00-1448 (La.App. 1 Cir. 9/21/01); 822 So.2d 617, writ denied, 01-2813 (La.1/4/02); 805 So.2d 204, and Townsend v. State Farm Mutual Automobile Insurance Co., 34,901 (La.App. 2 Cir. 8/22/01); 793 So.2d 473, writ denied, 01-2637 (La.12/14/01); 804 So.2d 635. In these two cases, after the insurers paid for their insureds' damaged property to be repaired, the insureds claimed that they were also entitled to damages for the diminished value of their property. The insurers denied the claims, and the insureds sued. In defense of these claims, each insurer argued that its insured's claim was governed by its policy of insurance, not tort law. The courts agreed.
In Campbell, 822 So.2d at 622-23, the first circuit observed:
Because a first-party claim sounds in contract, we find the distinction between third-party and first-party claims to be significant. As such, we agree with Markel that the terms of the insurance agreement govern Campbell's entitlement to recovery. Rules applicable to recovery in tort do not apply to an action on a contract of insurance. Thus, we do not consider what measure of recovery would make the insured whole after a loss. Because Campbell's suit is based on allegations of breach of contract, we focus on the language of the insurance policy and the ordinary meaning of the words defining the parties' obligations.
*1046 We agree with this reasoning and the courts' conclusions in Campbell and Townsend. Accordingly, we look to Clarendon's policy to determine this issue, which provides in part:
The most we will pay for "loss" in any one "accident" is the lesser of:
c. The actual cash value of the damaged or stolen property as of the time of the "loss"; or
d. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.
"Actual cash value" is not defined in the policy; therefore, we will use the "generally prevailing meaning" of the term. La. Civ.Code art.2047. BLACK'S LAW DICTIONARY 53 (4th ed.1968) (citations omitted) defines "actual cash value" in terms of "fair or reasonable cash price" and "[w]hat property is worth in money." The definition does not reference or indicate that "actual cash value" includes sales tax.
As previously noted, Clarendon cites Berthelot, 732 So.2d 1230, in support of its contention that Mr. Clark cannot recover sales tax paid on the truck. In Berthelot, the supreme court examined the nature of a sales tax, stating:
[A] sales tax is a distinct and separate charge which the retail seller is required to collect as a pass through entity for the benefit of the state and locality. Louisiana's "sales and use tax is an excise tax, a tax upon the transaction itself, not the property involved in the transaction." With regard to vehicle sales, Louisiana law provides that the general rule is that sales tax is due upon the sale price of the vehicle. Likewise, it has been statutorily recognized that the servicing and repair of automobiles give rise to the imposition of a tax.
A review of this thumbnail sketch of Louisiana's sales and use tax shows the fallacy of State Farm's position. Clearly, had State Farm undertaken the repair or replacement of its insured's vehicle, there would have arisen an event or transaction for which a tax could have been imposed. In such instances tax liability arises by operation of law. However, since no sale, repair, or replacement has occurred in the present case, no taxable event has taken place. Thus, although any of these transactions can give rise to the imposition of a tax, none has occurred in the case at hand.
Id. at 1234-35 (citations omitted) (footnote omitted) (emphasis added). The supreme court concluded that a sales tax increases the cost to the buyer, but does not increase the value of property.
Clarendon's policy provides for payment of the "actual cash value" of the damaged property. "Actual cash value" is defined in terms of "price" and "worth" without reference to any tax. As discussed in Berthelot, no transaction which could result in the imposition of a sales tax occurred in this case. And the fact that Mr. Clark paid sales tax on the truck did not increase its value. Accordingly, we conclude that the "actual cash value" of Mr. Clark's truck and property when it was stolen and/or damaged did not include sales tax and reverse the trial court's award for sales tax on Mr. Clark's damages. The damage award is reduced by $2,304.00, which represents 8.75% sales tax on all of Mr. Clark's damage awards.
If it is determined on remand that Mr. Clark's truck is not a total loss, the trial court is instructed to award sales tax on the repair of the truck.

Penalties and Attorney Fees
Lastly, Clarendon assigns as error the trial court's award of penalties and attorney fees pursuant to La.R.S. 22:658. *1047 It argues that it acted reasonably in handling Mr. Clark's claim because he did not establish that his truck was stolen before its cancellation of his policy became effective.
Under La.R.S. 22:658(A)(1), an insurer "shall pay" an insured's claim within thirty days receipt of a satisfactory proof of loss. When the insurer fails to do so and the "failure is found to be arbitrary, capricious, or without probable cause," the insurer is subject to a penalty "of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, ... together with all reasonable attorney fees for the prosecution and collection of such loss." La.R.S. 22:658(B)(1).
"[A]n insurer's [action is] `arbitrary and capricious' when its willful refusal of a claim is not based on a good faith defense or is unreasonable or without probable cause." Calogero v. Safeway Ins. Co. of La., 99-1625, p. 5 (La.1/19/00); 753 So.2d 170, 173 (citation omitted).
By notice dated March 14, 2002, Clarendon notified Mr. Clark that, effective April 15, 2002, at 12:01 a.m., his policy was being cancelled for "Underwriting Reasons." Mr. Clark contends that the notice of cancellation was insufficient because it was in contravention of the terms of the policy and Louisiana law.
La.R.S. 22:636.4(C)(1) lists seven reasons for which a commercial automobile insurance policy can be cancelled. Mr. Clark's policy was a renewal of a previous commercial policy. To cancel such policy, the insurer must mail or deliver a written notice of cancellation to the first-named insured at least thirty days before the effective date of the cancellation. La.R.S. 22:636.4(C)(2)(a). If the reason for cancellation is non-payment of a premium, the notice of cancellation must be mailed at least ten days before the date of cancellation. Id.
Mr. Clark argues that Clarendon's notice of cancellation was ineffective because it did not identify one of the reasons for cancellation listed in La.R.S. 22:636.4(C)(1). However, because Mr. Clark's policy was a commercial policy, Clarendon was only required to provide him with a written statement of the reason for cancellation if he requested the statement in writing, La.R.S. 22:636.4(C)(2)(b), and there is no evidence that he made such a request.
Clarendon's failure to pay Mr. Clark's claim was based on its belief that the policy was cancelled on April 15, 2002, at 12:01 a.m. and the lack of evidence establishing that the truck was stolen and damaged before the cancellation became effective. Under these facts, we find the trial court's conclusion that Clarendon was arbitrary and capricious to be error and reverse the award of penalties and attorney fees.

Decree
For these reasons, the award of damages for Mr. Clark's truck in the amount of $22,645.00 is reversed and the issue is remanded to the trial court for further proceedings in accordance with the reasons herein. Additionally, the award for towing and storage is reduced from $1,670.00 to $1,320.00; the award for Mr. Clark's other property is reduced from $1,945.00 to $1,695.00; the award for sales tax in the amount of $2,304.00 is reversed; and the award of penalties and attorney fees is reversed. Costs of this appeal are to be paid equally by the parties.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.