DREW, J.
 

 It Direct General Insurance Company of Louisiana (Direct General) appeals the February 29, 2008, trial court judgment in favor of John Lorick d/b/a South Park Auto Sales (South Park) for $15,338.82 plus legal interest from the date of judicial demand along with $6,450.00 in attorney’s fees and costs. In answering the appeal, South Park sought additional attorney’s fees for the appeal. For the following reasons, we amend and affirm the judgment.
 

 FACTS
 

 Jewell Scott purchased a 1976 Pontiac Grand Prix from South Park on October 11, 2004, for $4,012.77. South Park had a security interest in the vehicle. Scott’s automobile insurance policy was issued by Direct General, which listed South Park as a loss payee. Following an automobile accident on January 10, 2005, Scott claimed damages from Direct General and the matter was settled for $7,669.41, the amount of repairs to the vehicle. On February 4, 2005, Direct General (through its adjuster Melissa Ray) mailed a check in that amount payable to Scott and South Park.
 

 Ray determined that she had made a mistake, since the vehicle was a total loss with only a value of $2,526.58. On February 8, 2005, Ray stopped payment on the $7,669.41 check which had been issued January 27 and mailed thereafter. She also contacted the insured that same day according to her deposition.
 

 Also on February 8, 2005, Ray contacted Lorick at South Park concerning its lien-holder claim. As requested, Lorick signed a lien release statement and faxed the insurer’s form to Ray at Direct General. Lorick ^testified that Ray did not inform Lorick she had stopped payment on the $7,669.41 check made payable to Scott and South Park. In her deposition, Ray stated she informed Scott, the insured, about the stop payment.
 

 On February 15, 2005, Scott endorsed the $7,669.41 check and gave it to Lorick, who also endorsed it and deducted the amount Scott owed South Park and gave Scott a check for $4,875.96 for the difference. Lorick then mailed the title to Direct General, which took possession of the vehicle and disposed of it.
 

 On February 18, 2005, the $7,669.41 check was returned to South Park stamped “PAYMENT STOPPED.” When
 
 *1211
 
 Lorick asked Ray why the check was returned unpaid, she informed him he was at fault in cashing the check.
 

 South Park’s attorney mailed two demand letters by certified mail, the returns for which indicated the letters were received on March 9, 2005. South Park sought the amount of the $7,669.41 check plus two times the amount of the check, and reasonable attorney’s fees and costs. Direct General did not reply to the demand letters. On July 8, 2005, South Park sued Direct General for the $7,669.41 plus penalties and attorney’s fees. On January 18, 2006, Direct General sent a check for $2,526.58 payable to Scott and South Park. That check has not been cashed.
 

 REASONS FOR JUDGMENT
 

 In the reasons for judgment contained in the formal judgment, the trial court noted that Direct General provided collision coverage for Scott’s vehicle in which South Park held a security interest. Scott and Direct ^General settled Scott’s claim for $7,669.41. Scott gave Direct General’s check for $7,669.41 to South Park. Scott and Lorick endorsed the check which was deposited into South Park’s bank account. South Park deducted the $2,794.41 lien amount which Scott owed South Park and issued a check to Scott for the balance. Hibernia Bank refused payment of the check due to Direct General’s stop payment order.
 

 After considering the deposition of Direct General’s adjuster and the testimony of Lorick, the trial court found that there was no justification for Direct General’s stop payment request, that South Park complied with the requirements of La. R.S. 9:2782.2, and that South Park was entitled to the full amount of the check, plus penalties and attorney’s fees.
 

 THE LAW
 

 La. R.S. 9:2782.2 states:
 

 A. Whenever any drawer of a check stops payment on the check with the intent to defraud or when there is no justifiable dispute as to the amount owed or the existence of the obligation, the drawer shall be liable to a holder in due course as defined in R.S. 10:3-302, or a person subrogated to the rights of such holder, for damages of twice the amount so owing, but in no case less than one hundred dollars, plus attorney fees and court costs, if the drawer fails to pay the obligation created by the check within thirty days after receipt of written demand for payment thereof substantially in the form provided for in Subsection C which notice is delivered by certified or registered mail.
 

 B. The holder in due course may charge the drawer of the check a service charge not to exceed fifteen dollars or five percent of the face amount of the check, whichever is greater, when making written demand for payment.
 

 C.(l) Before any recovery under Subsection A of this Section may be claimed, a written demand in substantially the form which follows shall be sent by certified or registered mail to the drawer of the check at the address shown on the instrument:
 

 |/‘You are hereby notified a stop payment has been ordered by _ (name of bank) against a check drawn upon such bank, numbered_ and issued by you on _ (date), payable to _, which has been issued and/or negotiated to _, who is a holder in due course pursuant to R.S. 10:3-302. Pursuant to Louisiana law, you have thirty days from receipt of this notice to tender payment in full of the amount of the check plus a service charge of fifteen
 
 *1212
 
 dollars or five percent of the face amount of the check, whichever is greater, the total amount due being _, to such holder in due course. Unless this amount is paid in full within the thirty-day period, the holder in due course of the check may file a civil action against you for two times the amount of the check or one hundred dollars, whichever is greater, plus any court costs and reasonable attorney fees incurred by such holder in taking the action.”
 

 (2) Notice mailed by certified or registered mail evidenced by return receipt to the address printed on the check or given at the time of issuance shall be deemed sufficient and equivalent to notice having been received by the drawer of the check.
 

 (3) It shall be prima facie evidence that the drawer has no defenses to the claim of such holder in due course if notice mailed by certified or registered mail is returned to the sender when such notice is mailed within a reasonable time of the stopped payment to the address printed on the instrument or given by the drawer at the time of issuance of the check.
 

 DISCUSSION
 

 At the outset, we note that La. R.S. 9:2782.2 provides for penalties and attorney’s fees; it is penal in nature and must be strictly construed. Additionally, when a law is clear and unambiguous, it must be utilized as written when the application does not lead to absurd consequences.
 
 Royal Air, Inc. v. Pronto Delivery Service, Inc.,
 
 38,939 (La.App.2d Cir.12/14/05), 917 So.2d 1197.
 

 Direct General argued on appeal that the trial court erred in applying the provisions of La. R.S. 9:2782.2 to this dispute, since there was aj^justifiable dispute over the amount owed. Direct General admitted that it erroneously issued the $7,669.41 check payable to its insured and South Park, since that was the amount required to repair Scott’s wrecked car. Under Louisiana law, when the value of repairs exceeds the actual cash value of the vehicle, then the vehicle is a total loss for which the insurer must pay only the value less any deductible under the policy.
 
 Clark v. Clarendon Ins. Co.,
 
 2002-1314 (La.App. 3d Cir.3/26/03), 841 So.2d 1039. Direct General asserted that after adding the actual cash value $2,762.50 plus tax and title fees minus Scott’s $500 deductible, Direct General owed Scott only $2,526.58 for his vehicle.
 

 According to the deposition of Direct General’s adjuster, she informed Scott that Direct General owed him only $2,526.58, which would be sent to him to replace the $7,669.41 check. In the insurer’s view, a “justifiable dispute” existed when Direct General issued the stop payment order, because the insurer had discovered it only owed Scott $2,526.58 instead of $7,669.41, the repair estimate.
 

 On February 8, 2005, Ray faxed to South Park an agreement signed by Lor-ick that South Park would release a lien-free title to Scott’s vehicle upon receipt of $2,526.58 for Scott’s car which was a total loss. Lorick testified that he signed and returned the agreement which stated that South Park would release the lien-free title “[u]pon receipt of the insurance settlement check in the amount of $2,526.58 ...” Due to late fees and other charges, Lorick testified that the payoff due to South Park was larger than the amount given in the agreement.
 

 IsThe insurer urged that South Park was at fault in negotiating the check payable to Scott and South Park. Lorick testified that Ray told him he was stupid and
 
 *1213
 
 should have called to verify Direct General’s $7,669.41 check presented to South Park by Scott. Lorick testified that South Park was an honest business and that when Scott presented the $7,669.41 check payable to Scott and South Park, South Park relied on Direct General’s honesty and integrity in cashing the check, deducting only the amount due to South Park and giving the balance to Scott.
 

 Ray stated in deposition that she called Scott and informed him the $7,669.41 check payable to Scott and South Park had been issued in error and that he would receive a replacement check for $2,526.58. Curiously, when Ray had communicated with South Park on February 8 (the day she stopped payment on the $7,669.41 check payable to Scott and South Park), she did not choose to inform South Park. She never sent South Park a letter or made a phone call informing the dealer that payment had been stopped on the $7,669.41 check. Her explanation was, “That is not the proper procedure.” She also said, “[I]t is not my position to inform the lien holder that we are issuing a stop pay on the check because the lien holder is not to cash the check.” The adjuster admitted that nothing on the $7,669.41 check payable to Scott and South Park indicated that the check was for auto repairs. Ray also acknowledged that Direct General had taken possession of the car and disposed of it.
 

 The record contained South Park’s demand letters seeking payment of the amount of the dishonored check mailed to the insurer dated March 7, |72005, with return receipts showing delivery to Direct General on March 9, 2005. Also in evidence was a $2,526.58 check dated September 2, 2005, and payable to Jewel Scott and South Park Auto Sales. A January 18, 2006, letter of transmittal to South Park was filed into evidence. South Park placed into evidence the original check which had not been negotiated.
 

 In its answer to appeal, South Park sought additional attorney’s fees for the defense of this appeal. Because Direct General did not respond to South Park’s demand letters about the dishonored check, South Park maintained that inaction constituted
 
 prima facie
 
 evidence that Direct General had no defenses against the dealer’s claims. According to South Park, as a payee on the check, it should have been informed by Direct General that it had stopped payment on the check. South Park relied on the check and suffered a loss when the insurer stopped payment.
 

 South Park sought to distinguish
 
 Royal Air, Inc., supra,
 
 because a justifiable dispute existed as to the amount due so that Royal Air was not entitled to penalties. Pronto paid Royal Air by check for repairs to a plane which crashed on its second test flight. Pronto stopped payment on the check. When sued by Royal Air, Pronto reconvened claiming the plane was improperly repaired, resulting in a justifiable controversy as to amount. In South Park’s view, no such dispute over the amount owed existed here and requested that the trial court’s judgment for the full amount of the check plus penalties and attorney’s fees be affirmed. Alternatively, South Park sought a judgment of $2,526.58 plus penalties and attorney’s fees under La. R.S. 9:2782.2. After stopping payment on the check, Direct General took ^possession of and disposed of the vehicle. A check for $2,526.58 was not sent until January 18, 2006.
 

 In this unfortunate situation, mistakes were made by all involved. With the benefit of hindsight, South Park undoubtedly should have been less likely to take a situation at face value and to conduct its business as if all parties followed honorable business practices.
 

 
 *1214
 
 The failure of the Direct General adjuster to inform South Park that payment had been stopped on the $7,669.41 check payable to Scott and South Park is inexplicable and egregious behavior. The adjuster’s explanations were self-serving and completely lacking in consideration for one of the payees on the check issued by the insurer.
 

 Regrettably, La. R.S. 9:2782.2 does not apply to this dispute. Its penal provisions must be strictly construed and its clear terms must be applied as written. Direct General correctly notes that the amount owed was disputed. In its initial contact with South Park, Direct General’s February 8, 2005, correspondence indicated that South Park would receive $2,526.58 for Scott’s car which was a total loss after which South Park would release to Direct General a lien-free title. South Park signed and returned the agreement to Direct General, which failed to inform South Park about the erroneous $7,669.41 check. Thereafter, South Park returned the lien-free title and the insurer took and disposed of the wrecked vehicle.
 

 The actions of the Direct General adjuster resulted in the loss to South Park. However, the February 8, 2005, agreement executed by South Park stated that the vehicle was a total loss, not feasible to repair, with a | flvalue of $2,526.58. South Park agreed to tender a lien-free title upon receipt of a settlement check in that amount. After learning that South Park, a loss payee on its policy, had negotiated its $7,7669.41 check erroneously issued for repairs, the insurer waited months before even tendering what in its view was owed on the policy.
 

 DECREE
 

 Since the provisions of La. R.S. 9:2782.2 are inapplicable, the judgment is amended to delete the portions awarding penalties and attorney’s fees. Notwithstanding Direct General’s conduct, the judgment in favor of John Lorick d/b/a South Park Auto Sales is amended to award $2,526.58 (the value of the wrecked vehicle plus tax and title fees less Scott’s deductible). Direct General is ordered to pay legal interest from the date of judicial demand until paid and is ordered to tender that amount forthwith to John Lorick d/b/a South Park Auto Sales. Costs are assessed against Direct General Insurance Company of Louisiana.
 

 AMENDED, AND AS AMENDED, AFFIRMED.